**UNITED STATES of America**

v.

**Steven WEINKSELBAUM.**

**Crim. No. 79–41–3.**

United States District Court,
E. D. Pennsylvania.

Jan. 14, 1980.

Thomas E. Mellon, Jr., Asst. U. S. Atty., Philadelphia, Pa., for the Government.

Malvin L. Skaroff, Philadelphia, Pa., for defendant.

## MEMORANDUM

POLLAK, District Judge.

Steven Weinkselbaum was indicted on February 14, 1979. The indictment charged various violations of U.S. Customs and wildlife laws, most especially the Lacey Act, 18 U.S.C. § 43. Weinkselbaum was arraigned on February 21. Early in March, he moved to dismiss alleging (1) the staleness of the charges and (2) the unconstitutionality of the Lacey Act. The case was set for trial on May 23, but on that day Weinkselbaum represented it as probable that he would change his plea to one of guilty and requested a continuance to facilitate the working out of a plea agreement. A continuance was ordered until June 11. On that day, Weinkselbaum moved to change his plea; but the motion was denied when it became apparent that Weinkselbaum, while acknowledging that he had performed the acts charged, continued to insist that he lacked the intentionality or awareness of wrongdoing which is a necessary ingredient of violations of the Lacey Act. Continuances over the summer resulted in a re-scheduling of Weinkselbaum's trial for the early fall. Finally, on October 5, following my denial of his earlier motion to dismiss, Weinkselbaum moved to dismiss the indictment on the ground that he had not been brought to trial with the promptness specified by the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161, et seq.

Specifically, Weinkselbaum contends that because he was indicted between July 1, 1978 and June 30, 1979, he should, pursuant to 18 U.S.C. § 3161(g), have been brought to trial within eighty days, plus such number of days as are excludable pursuant to 18 U.S.C. § 3161(h), following his arraignment. Without going through the calendar arithmetic tendered by Weinkselbaum (and challenged in considerable detail by the Government), suffice it to say that Weinkselbaum contends that the time period from arraignment to trial mandated by the Speedy Trial Act ran out in his case in late May of 1979, or at any event during the summer months. With this as predicate, Weinkselbaum contends that, as of the October 5 hearing, he was entitled to dismissal of this indictment, either "with or without prejudice," since that sanction is specified by 18 U.S.C. § 3162(a)(2) for the failure to bring a defendant to trial within the mandated number of days following arraignment.

The Government challenges Weinkselbaum's arithmetic. In addition, the Government contends that even if Weinkselbaum's trial should have commenced as early as May, Weinkselbaum is nonetheless not entitled to relief because the sanction of dismissal specified in the 1974 Speedy Trial Act (a) did not take effect until July 1, 1979, and (b) lapsed on August 2, 1979 when amendments to the Speedy Trial Act were signed into law by the President.

The first prong of the Government's case is 18 U.S.C. § 3163(c) which specifies that "Section 3162 of this chapter ["Sanctions"] shall become effective after the date of expiration of the fourth twelve-calendar-month period following July 1, 1975." The Government understands this language to mean that the count-down of the permitted maximum time period between arraign-

ment and trial could not commence prior to July 1, 1979, the date on which the sanctions specified by the 1974 act were to "become effective."

The second prong of the Government's case is Section 6 of the Speedy Trial Amendments Act of 1979 which, in replacing the language just quoted, states in relevant part: ". . . section 3162 of this chapter shall become effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980," The Government argues, in reliance on this August 2 amendment deferring sanctions until July 1, 1980, and then only for cases begun on or after that date, that even if the time period within which Weinkselbaum should have been brought to trial had lapsed sometime between late May and August 1, the enactment of the amendatory statute withdrew the sanction of dismissal as of August 2.

This second aspect of the Government's argument suggests problems of far larger dimension than parsing the language of the Speedy Trial Act of 1974 and its 1979 amendments. For if pursuant to the 1974 Act Weinkselbaum's time had run, and his entitlement to dismissal had matured, on or before August 1, the question whether Congress could, by legislation effective on August 2, retrospectively deprive Weinkselbaum of the dismissal sanction, would seem to pose substantial constitutional problems. But those constitutional problems need not be reached unless Weinkselbaum is right on the statutory question: assuming Weinkselbaum should have been brought to trial on or before August 1, did the 1974 Speedy Trial Act contemplate (a) the concurrent maturation of his entitlement to dismissal, as he contends, or (b), as the Government would have it, a counting of days beginning no earlier than July 1? The answer to that question turns on the meaning of the phrase "become effective" in the mandate of former Section 3163(c) that "Section 3162 of this chapter shall become effective after the date of expiration of the fourth twelve-calendar-month period following July 1, 1975."

Weinkselbaum's claim of entitlement to dismissal of his indictment rests on the contention that the phrase "become effective" means that on July 1, 1979 ["the date of expiration of the fourth twelve-calendar-month period following July 1, 1975"] a person who should have been brought to trial on or before July 1 was entitled to dismissal forthwith. If Weinkselbaum's construction of "become effective" is incorrect—if the phrase means that July 1, 1979 was to be the earliest day on which the counting of the statutorily mandated maximum number of days from arraignment to trial could commence—then Weinkselbaum is not entitled to dismissal of his indictment.

From a syntactical point of view, either reading of the words "become effective" is a permissible one. And it may be argued that either reading is consistent with the general statutory pattern of the 1974 Act: the Act contemplated the phasing in, at annual intervals, of steadily more compressed timetables from arrest to indictment, from indictment to arraignment, and from arraignment to trial, so that the maximum permitted time from arrest to trial was to be reduced from two hundred and fifty days (plus excludable time) during July 1, 1976 to June 30, 1977, to one hundred days (plus excludable time)—thirty days from arrest to indictment, ten days from indictment to arraignment, and sixty days from arraignment to trial—as of July 1, 1979. To be sure, there is considerable weight in the Government's reading of the Act as intending that everything was to be in the nature of rehearsal up until July 1, 1979. And yet it would not be wholly unreasonable to conclude nonetheless that infractions completed prior to July 1, 1979, should have been remediable forthwith—assuming there were any extrinsic evidence that the legislation should be so read. Somewhat curiously, the legislative history of the 1974 Act appears to be silent on this particular matter. There is, however, clear evidence that the legislators who, in June and July of this year, had principal responsibility for the presentation and adoption of the 1979 amendments to the 1974 Act, understood the Act they were amending in the

sense contended for by the Government. On June 19, 1979, Senator Biden, manager of the amendatory legislation on the Senate floor, said in the course of his address opening the debate: (125 *Cong.Rec.* S8011).

Unless this amendment is enacted into law, prior to July 1, the immediate consequences would be as follows:

As to persons arrested or served with a summons prior to July 1, the Government would have 30 calendar days, plus applicable excludable delays, after July 1 within which to file an informations or indictment against them.

As to persons against whom indictments or informations are filed prior to July 1, the Government would have 60 calendar days, plus applicable excludable delays, after July 1 within which to bring them to trial.

As to all other cases commenced by arrest, summons, indictment or information after July 1, the same restrictions would apply.

Failure in any of the above instances to observe the specified time periods would enable the defendant to move for dismissal of the charges or indictment or information and, if the defendant meets his burden of demonstrating that his indictment or trial was delayed outside the time limits of the act, the court would be required to grant the motion.

Normally one must exercise extreme caution about inferring Congress's original intent from legislative discussions some years later. For there is always the hazard that a controversy arising subsequent to the enactment of legislation will become the occasion for the formulation of *ex post facto* insights into issues which may simply not have been contemplated by those who drafted and adopted the legislation. But in the present instance, Senator Biden's analysis carries with it every hall-mark of reliability: (1) It was stated in advance of the "become effective" July 1 date, by way of explaining the importance of adopting corrective legislation expeditiously. (2) No other member of the Senate and no member of the House said or wrote anything at variance in floor debate or in committee reports. (3) If, in the course of the June and July legislative deliberations, there had been any apprehension that, even as debate went on, criminal defendants were on the brink or in the very act of seeking dismissals of indictments forthwith for non-compliance with the 1974 Act, one would have expected that apprehension to have been voiced by some member of the House or Senate; yet, the Congressional Record can be paged in vain for an expression of such concerns. In short, it appears that Senator Biden's interpretation of "become effective" is the single clearly relevant construction offered by anyone in Congress either in 1974 or in 1979. Accordingly, there seems every reason why it should be accepted as the proper construction by courts charged with implementing the 1974 act[1] and its 1979 amendments.

Acceptance of this construction means that Weinkselbaum's claim fails. Assuming that, under the timetable laid down by the 1974 Speedy Trial Act, Weinkselbaum should have been brought to trial before July 1, 1979, a counting of the days for sanction purposes would have commenced only on that date. By the end of August 1, only thirty-two days would have elapsed— far short of the sixty days which would have brought the sanctions into play. Effective August 2, the amendatory statute cut off any further counting for sanction purposes.

Therefore, Weinkselbaum's motion to dismiss is, in an order filed today, denied.

---

1. I would note that my colleague Judge Becker, in a characteristically perceptive bench opinion, has reached the same view as to the proper construction of the 1974 Speedy Trial Act. *United States v. Molt*, Cr. No. 77–341 (E.D.Pa., Dec. 7, 1979).